Good morning, Your Honors. My name is Catherine Dixon, and I'm pleased to be able to present this argument on behalf of plaintiffs, appellants, Michael Ruhe and Vicente Catala. Mr. Ruhe and Mr. Catala are present in the courtroom this morning. I'd like to reserve five minutes of my time for a rebuttal, and I understand it's my obligation to watch the clock. Speed, efficiency, and finality. No appeals. The supposed hallmarks of arbitration. When Masimo imposed arbitration on its employees and compelled these plaintiffs to arbitration, and when Masimo selected the arbitrator, Masimo itself was bound to live with the results of the arbitration. But here we are, six years and millions of dollars later. Not very speedy or inexpensive, is it? No. With the company arguing it all ought to be scrapped and we should just start all over again. Masimo is satisfied with arbitration only when it wins, and it was satisfied with Justice Neal only when it won. Let me ask you a question. Let's assume for a moment that the district court's bias ruling is not sustainable. What do we do with a punitive damages award that appears to be unconstitutional on its face? It's 16 to 1 in a case with a rather low level of reprehensibility if you look at the world at large. Nobody was beaten, killed, attacked. If I think the punitive damages award is unconstitutional in amount, not that there was an award, but in amount, is there anything a court can do in this circumstance? No. If it were $160 million, would you say the same thing? That might present a difference. I hate to—now we're niggling. The question is, where does the line fall where an award that I think may violate due process in terms of its amount allows a court to intervene? Well, really, the law from this circuit, Lagsteen being the most recent case to address this, says it is not the business of the courts to determine what the punitive damages should be. To be sure. To be sure. My question is a different one. If there's a punitive damages award from an arbitrator that seems to—well, let's just assume for present purposes I think the award violates the due process clause because of its size. Nothing I can do? No, there's nothing you can do in this case, and there's nothing you should do, because the arbitration award of punitive damages in this case was carefully calibrated within the law. Well, it's 16 to 1. The Supreme Court's told us that it will rarely be—it will rarely comport with due process to go above single digits. And, frankly, with all respect to the arbitrator and to your client's position, the amount of reprehensible conduct here seems to be relatively low. The reprehensible conduct here was not relatively low. This was a company that knew that its device was not performing in doctor's offices and on very vulnerable patients, nephrology patients, pediatric— But to be sure, let's assume that's true, and let's assume that the patients suffered damage. You have a problem in the other case with that, but we'll get back to that in a little while. Your clients aren't entitled to recover punitive damages because of potential harm to others. Isn't that precisely what the Supreme Court said in State Farm? No. The Supreme Court said in BMW v. Gore that reprehensibility is the most important factor, and one of the factors to determine reprehensibility is potential harm to others. In Gore, wasn't the—didn't the Court say you couldn't—you couldn't contend that other members of the class might— other people outside of the group might be harmed because that would give rise to double punitive damages? No. What occurs in a whistleblower case, which always permit punitive damages, is two kinds of harm, not just one. There's harm to the individual who is being forced to make misrepresentations about a product, so they're out in the market, they're destroying their good name, they're really concerned about what's happening or could happen to the patients who are being diagnosed with these devices. There was a young girl who was sent home who needed a blood transfusion. This device improperly detected what was going on. So there are people getting— So let's assume I don't—but let's assume you couldn't convince me, if I were the trial judge, in a regular case that 16 to 1 was anywhere near the appropriate level of punitive damages here. You told me before if it was $160 million, we might be able to intervene. If it's whatever the number is here, we can't intervene. What's the guideline for when the award becomes so large that it's a manifest legal error? If it's completely irrational. Well, look, the district arbitrator did an incredible job in laying all this out, made a very thorough analysis, and he went through every single step very carefully, did diagrams. I've never seen as fine a piece of work as this. And I don't think that the punitive damage award was excessive. Not what these folks had to go through. And it's just all laid out there. And he gives you the guidelines on excessive awards and, you know, the ratios and all that. I don't—you know, we always like these little tests, these little three-prong, four-prong things. But you have to look at the whole thing overall. And, you know, $5 million is not a lot of money these days. Judge Hurwitz, if I might. Ask the lawyers. They'll tell you that. Judge Hurwitz, let me just describe how the analysis was done. No, and I've read, like Judge Braggerson, I've read the award, and it's one of the things that gives me trouble on both sides of this case. The judge certainly applies the correct legal principles. He recites the correct tests. He relies on facts. When I say the judge, I mean the arbitrator in this case, but he was a judge. But at some point, the Supreme Court has told us that a punitive damages award violates due process. And so I'm trying to figure out where those two things intersect. Well, in this case, you're looking at three things, and you're trying to calibrate them. It's kind of a sliding scale. So you look at the amount of compensatory damages. They were pretty low here. These were good salesmen. They went out. They got jobs right away. So you have a low compensatory award. Yeah, but not a trivial number, a number a little less than 100,000 if you add them both together, I think. Justice Neal found significant reprehensibility. So that has to be taken care of in the punitive damages calculation. And then you have to look at the deterrent and punishment effect. You have to look at. . . Well, he did all those things, and that's what gives me trouble. But he ended up with a number that the Supreme Court's told us is presumptively unconstitutional. But he got past the presumption with the factors that he applied here, and it fits within the employment cases and other cases that we were looking at. So, for example, you have a lower ratio if the compensatory damages are already really high, Roe v. McKesson, a bunch of the other cases that we briefed. So you're not going to see a multiple in the 10 to 20 range if the compensatory damages are already so high. Now, I took you off track, and I know that I did. And a large part of the briefing is about bias, so I don't want to monopolize your time.  First of all, what is the standard that we are to apply in reviewing the arbitrator's decision? The standard of review here is de novo. It's de novo when a court vacates an arbitration award. It's de novo on the legal questions involved here. It's de novo on the application of the law of evident partiality. Our review of Judge Cormack's decision is de novo. What is the standard of review for Judge Cormack's decision whether or not to vacate the award of the arbitrator? It should have been as deferential as you can imagine. As courts have said, the- Wait, what does that mean? Is it de novo or abuse of discretion or what? It's giving all deference to the arbitrator. There aren't a particular basis for setting aside the award in the statute? In the statute, it has to be- Corruption, fraud. Evident partiality or corruption is the prong that Massimo was looking to. So how do we review Judge- Because the arbit- How do we review Judge Neal's determination that there- Judge Neal, Judge Cormack's determination that there was evident bias or partiality? What Judge Cormack was doing was applying the law of evident partiality to what are, in essence, undisputed facts. It's a de novo review. It is at best- So now get back to Judge Wardlow's question. What was- What- How did- How should Judge Cormack have determined whether there was evident partiality? Does he do that? Do we- What's his standard of review? Obviously, Judge Neal turned down the request to recuse himself, so- Correct. Correct. And he was permitted to do that. Massimo never raised the Jams Rule 15i issue. But does Jams Rule 15i even apply? No, it's not controlling. Even- Well, because it- And Massimo knew- had all that information anyway for a long period of time. That's why 15i doesn't apply. And they knew punitive damages were going to be awarded. Right. And they only brought it up the night before they were to appear in court. Right? That's 36 hours before the hearing was to take place. Yeah. Long after- And the judge responded at midnight. He got it late at night, and he was up there and did it and sent it out that night. Finality and closure were important to Justice Neal at that point. Once the underlying merits award finding a predicate for punitive damages was issued, Massimo made motion after motion, tried everything, asked the judge to delay the proceeding for 90 days, asked Justice Neal, after they had made a recusal motion for bias during the final hearing, they asked Justice Neal, you preside over our 90-day study. This is someone they had just accused of so much bias that he shouldn't be allowed to finish the arbitration, and they say, we want you to run our scientific study. We'll offer you that right now, after they've made the bias challenge. What that shows you is the bias challenge was not credible. It was not reasonable, and that is what Justice Neal found. I know you want to save some time for rebuttal, but let me ask you just one quick question. The district court here didn't reach the, I don't know whether it's an A4 issue or the manifest legal error issue. Is that something we should reach, or should we remand to the district court to address it? You should absolutely reach it. The standard of review is going to be de novo. So why should we go back to the district court and spend another two years on this six-year case to see what the district court has to say when the standard of review is going to be de novo anyway? You have all of the briefing. In our supplemental excerpts of record, you have the briefs on all of the issues that Massimo raised in the district court. You have everything before you. You want us to do that, even though I've suggested that I think the award may be too large? I'm kidding. We want finality, Your Honor, and that's what arbitration promised, and that's what we're asking this court to give. All right. Thank you, counsel. Counsel for Massimo. Good morning. May it please the Court. Joseph Ray from Massimo Corporation. Can I just ask something? So you're with Knobby Martins. Knobby Martins. Knobby Martins. Okay. What happened to Paul Hastings? Weren't they the ones who brought this recusal motion against Justice Neal? Nothing happened to them. They're still here. Are they here? They're watching. They're out there. Yes, they're watching. Everyone's here. Okay. They're the ones, but they're not defending this particular thing. Right. I was the one who argued in the district court on the evident partiality. I want to address, first of all, the standard of review. The standard of review is de novo, but not with regard to the findings of fact. There are numerous findings of fact which are not challenged as clearly erroneous in this case. For example, the findings of fact by Judge Carney that Massimo did not know of the situation with the arbitrator and his brother and raised it immediately, promptly before the hearing. What is that finding of fact based on? Was there an evidentiary hearing before the trial? No. Did the district court hear? There was submission of numerous declarations from both sides on that exact subject. So given the fact that we're just reading a paper record, why do we give any deference to the finding of fact? Because under Anderson v. Bessemer City, it's well known that the clearly erroneous rule applies to findings of fact, even though the findings of fact come from a documentary record. So it doesn't change the nature of the findings. Well, suppose we think that Judge Carmack was clearly erroneous in reaching that decision, given that any Google search would have brought up both record of the brother's involvement in the prior Massimo case. Massimo itself knew about that. And Paul Hastings and Massimo chose Justice Neal in the first place. And I happen to think very highly of Paul Hastings as a law firm, and I don't think for a second they didn't do their homework before selecting Justice Neal. Paul Hastings did not know. Paul Hastings didn't handle the cases that were involving the arson of his brother. Does it matter whether they knew? Here what we have in the end is a recusal motion that says, well, your brother was adverse to us at some point. I don't think that would require recusal, even if brought up at the beginning of the case. And that's very important. Judge Carney did not decide that question. The question was who gets to decide. Well, but the who gets to decide is a legal error, and that's my problem with your bias case. You've got a judge, an arbitrator, who may have made a bunch of legal errors in terms of who decides and how things were decided. But how does that demonstrate bias? What you need to have here is manifest bias or prejudice, according to A2, I think. And so what's the demonstration of bias here? He may have made a mistake with all these rulings. I'll accept that for present purposes. When does that demonstrate bias? First of all, the statutory language that Judge Carney did use is evident partiality. Okay, fair enough. Why does that demonstrate evident partiality? It does because there are numerous findings of evident partiality that the judge made. Well, the judge made numerous findings, but they all have to do with Justice Neal, I guess, because he was on the Court of Appeal, with Justice Neal making mistakes, making erroneous rulings, not sending it if it were required to go to jams, making an award that I think is problematic. But those are all bad judging. If bad judging showed evident partiality, this would be a two-judge panel. I, the only other, my colleagues would be here, but I might not be. So why is that evident partiality? Well, because there's numerous findings by Judge Carney that it wasn't simply bad judging. I know, but he made, how did he make those, what is, he didn't have, he didn't, Judge Neal didn't come there and say, ha-ha, I stuck it to them. He based it on the fact that there were bad rulings. And what Judge Wardlaw is asking is can't we find it, isn't that just a clearly, illegally erroneous way of finding partiality? As Judge Carney said, he's free from looking at the entirety of the record to see if the evidence as a whole suggests evident partiality. But what evidence suggests impartiality? Well, for example. Tell me. Retaliation for bringing the motion that the key TAM might have collateral estoppel consequences. Judge, the arbitrator asked for that briefing, and then he penalized Massimo for bringing the very briefing he asked for. And that's a, and I think that's a bad legal ruling. My question is why does it demonstrate impart, why does it demonstrate partiality? Because. Because he cited a, he cited a Third Circuit case. The case really doesn't say what he cited it for, but he, he did what judges, what judges do when they make mistakes. They look at the law, they put the facts next to them, and sometimes they come out the wrong way. Well, what Judge Carney noted about that was. But tell me, tell me why did, why did you wait until the last minute when, to send, send that information to the judge and ask him to disqualify himself? As Judge Carney. You knew all that information. No. Yes, you did. Judge Carney found to the contrary. Based on the declaration. Well, when did you know it? When did you know it? Well, it is, it's actually irrelevant whether they knew it or not. The issue, the standard is whether it's publicly available. And that information was publicly available. There is no one in the LA legal community who did not know that Justice Neal's child had died of SIDS. There is nobody who didn't know that. And why did you bring up the other firm, bring it up at the last minute? And what relevance does it have anyway to what the question of bias or not? The question that was raised and what Judge Carney found was, first of all, it was raised as soon as it was learned of. On January 8th, just the arbitrator decided himself, which is contrary to his own rules that govern his own organization. No, it's not. I will read you 15i. It says, at any time during the arbitration process, a party may challenge the continued service of an arbitrator for cause. The challenge must be based upon information that was not available to the parties at the time the arbitrator was selected. So the standard is whether it was based on information that was not available to the parties. And I would submit that this information was available, certainly to Massino, with respect to the representation by the brother. And any Google search would come up with the SIDS involvement. Well, those are contrary to Judge Carney's findings. Well, does it matter? It doesn't matter. This is not the basis for recusal. If you found out that my brother, who is a lawyer, had once sued your client, you could not get me recused from this panel, no matter what process we used. So you brought a motion for recusal that, however it got denied, was not denied in any outrageous fashion. So what other evidence do you have of impartiality? Well, Judge Carney found three other types of retaliatory acts by the arbitrator against Massimo. Right. And they had to do with the amount of punitive damages. No. Not the award, but the amount. No. It was the arbitrator mischaracterized all of Massimo's arguments concerning the reprehensibility. Right. Which we shouldn't quibble with. They went to the amount of punitive damages, right? Reprehensibility goes to the amount. Yes, but Judge Carney noted, Judge Carney wasn't disagreeing on the merits. He was disagreeing with the arbitrator's belief that Massimo made a particular argument that it never made. And so it penalized Massimo for making an argument it never made. That finding is not challenged as clearly erroneous. And it may be he may have made a mistake in doing that, but why does that show partiality as opposed to fair judging? It shows partiality in these findings in their totality. There's numerous. Also the ketan. He penalized Massimo for bringing a brief on the ketan collateral estoppel when he himself authorized the filing of the brief. And then he found that to be a litigation abuse. And then he says the litigation abuse allows me to increase the punitive damages. These findings are, there's multiple findings, and these findings are not challenged as clearly erroneous. So the things I just told you. No, the findings are not challenged as clearly erroneous. The findings are that he did those things. What they're challenging is whether or not they demonstrate partiality. And I don't know how the district judge has any better ability to figure out whether they demonstrate partiality than we do. In other words, the facts are the facts. You're right. But whether they so demonstrate partiality as to require upsetting an arbitration award I think is a question we review de novo. But not the underlying findings you don't. Just because the findings were made based on the documents doesn't make them conclusions of law. I mean, that's the whole teaching of Anderson v. Bessemer City. Rule 52A governs findings of fact, regardless of the source of the evidence. And so I do think I'm going to say that. His determination of partiality in your view is a finding of fact? No. The ultimate conclusion, I agree, is de novo. Okay. But it rests on numerous findings of fact. Right. And I'm saying I accept the findings of fact, but the findings of fact are simply that he did things that in reviewing it I would reverse a district judge for doing. The question isn't whether or not he made mistakes. I have a difficult time buying the argument that the rulings were correct. The question is when do we get to why does that allow us as a court to overturn an arbitration award? Isn't the arbitration system based on the notion that you've got one guy and he may screw it up, but that's too bad? Yes, except for under the statute. If a district court can look at the record and believe that there's evident partiality, that's an exception to not reviewing the merits. 10A2, Lackstein is a 10A4 case, but under 10A2 Judge Carney is free to make findings of fact that he believes support a conclusion of evident partiality. That conclusion is de novo, but all the findings of fact, the retaliation findings, the fact that it was retaliation for just bringing the recusal letter, he said was a litigation abuse. Then he said the Keaton motion was a litigation abuse. Then he said our view of the case law was a litigation abuse, even though litigation abuses can't be used to increase damages. But those findings, those are underlying findings that are not challenged as clearly erroneous. They just say that Judge Carney doesn't have the power to look at the record and make findings of fact. That's their argument. And, of course, Judge Carney has the power to make findings to support evident partiality, to vacate the award and have a new trial. We're not talking about Massimo getting judgment here. We're just talking about it having a new arbitrator. That's what we're talking about here. If there were a new arbitration, would it be limited to the amount of punitive damages? No. As Judge Carney found, that it undermined the integrity of the entirety of the award. I don't think an arbitrator can decide just punitive damages and not decide liability. But let me ask, if the case had ended after the damages portion, if Judge Carney had said at that point, I'll give you a dollar in punitives, you wouldn't be here, would you? If Judge Carney said it? If Judge Neal, I'm sorry, had said, I'll give you a dollar in punitives, you wouldn't be here. You don't have any evidence before the punitive damages calculation of evident partiality, do you? Yeah. I mean, the manifestation. I know you're saying it permeates the case. But I'm asking, what if the world ended on the day you filed the recusal motion? He denied it and said, and I find $10 in punitive damages is appropriate. You wouldn't be here, would you? Well, there wouldn't be a lot of the findings of retaliation. But none of the findings, that's what I'm trying to ask you. All the findings seem to stem right after the recusal motion was filed. Yes. They manifested themselves after the recusal. And after the determination of liability was made, right? Judge Neal said, well, there's two steps. I find them liable. I think punitive damages are appropriate. Now we'll move on to punitive damages. Yes. And what intervened was your recusal motion. Yes. So it seems to me all the partiality that you're arguing seems to have to do with the determination of the amount of punitive damages. Yes. Except for the Rule 15i issue and deciding the recusal and the retaliation for bringing the recusal to begin with. See, that's not part of the calculation of damages. But he did then say those were litigation abuses, which then led to the higher punitive damages amount. But you're right. The manifestation of the partiality is evident in the final award where the punitive damages discussion takes place. That is correct. But we don't know when the bias surfaced. It's just manifested for the first time in the January punitive damages, the final award. And that is correct. Well, you knew long before that, not long before, but that punitive damages were going to be imposed. He said that in the interim award. Yes. That's correct. So you knew what was coming. No, we didn't know there'd be retaliation, though. We didn't know. Oh, you knew that punitive damages would be awarded. He said he was going to award punitive damages. He said. So that's what he said. No, but now he used the litigation abuse to enhance the punitive damages, not just to award them, but he said the litigation abuses allow them to increase as additional factors increase the punitive damages. And that was improper, not only improper, but as Judge Carney found, those were retaliatory in nature. And no judge can retaliate against a party. That would be awful for arbitration, for people to think that you could sustain findings of evident partiality and think that the district court's not empowered to do that. The district court is empowered to make findings of evident partiality. He made several findings. They're not challenged as clearly erroneous. And, therefore, Judge Carney's ruling is on appeal here. When did you first learn that the judge had a brother who was a lawyer? That's not the issue. The issue was when we first. I'm asking you a question. Yes. January 8th. January 8th. The brother and the brother was the adversary of Massimo. You see, it wasn't just simply who the brother was, but he should have. The point was we didn't know who the brother was in relation to Massimo until January 8th and it was immediately brought to the attention. It would have been easy to determine. You just look up a little bio on the judge and that would tell you that he had a brother who was a lawyer. But the lawyer. Look, I've got a brother who's a lawyer. I've got a grandson who's a lawyer. You ask me, do I know what they're doing? I've got a son who's a judge. I don't sit around and talk to him and know about everything he's doing every day. He doesn't ask me. I don't ask him. We just lead our own lives. But this is not a failure to dispose of. It's not too interesting, some of the things that go on. So it's not that exciting. There's nothing newsworthy about it. But this is not a failure. So how many days was it before the decision on punitive damages? You've been learned about that. Two days. It was January 8th. Two days. No, the hearing was January 9th. The decision was January 16th. So it was brought to his attention on January 8th. So you're saying you had no idea that this judge had a brother who was a lawyer who was with a Cooley firm, which is a major law firm, and that his brother had cases against your client. Correct. It was January 8th, and that's exactly what Judge Carney noted in his opinion. And we had declarations on that subject. So I don't think there's a basis. What did the judge say? What did the arbitrator say? The arbitrator say about what? On that time period. On the time period? He ruled on January 9th. He didn't say anything about it. No, no, no. Was there anything said or presented about when you first learned about this situation? No, he thinks there should have been constructive knowledge. That's what's being argued here. But actual knowledge, there was no actual knowledge until January 8th. And Judge Carney found out. What's wrong with constructive knowledge? Here's what the arbitrator found. He said, The information upon which this request is based has been available for years, and Massimo could and should have raised these points long ago, and certainly before it received the interim award revealing a decision adverse to Massimo. That's what he said. That's the answer to Judge Ferguson's question. And even Judge Cormack said 15i didn't apply. Right? It says 15i does apply. No, he didn't say it did apply. He says even though on its face it doesn't apply because the information was available, I think his failure to use it is evidence of his partiality. He doesn't say it applied. But before you sit down, can you cite me any case in which a federal court has found partiality based on bad legal rulings, as opposed to some extrinsic thing that later comes up? Well, the Pitta case, which was cited by Judge Carney. The Pitta case is where the Second Circuit specifically said that the arbitrator should not decide the validity of his own recusal. Judge Carney cited the Pitta case. This court has repeatedly discussed the Pitta case, and the Pitta case, I notice, is not even mentioned in my adversary's brief. So the Pitta case is a case where the court specifically said under the evident partiality standard on remand that arbitrators should not be deciding the validity of his own recusal. That case is cited by Judge Carney for the fact that it's inherently unfair for an arbitrator to decide his own recusal. And in Pitta, there wasn't a rule like 15i. That's why Judge Carney noted that 15i is not controlling. But arbitrators should not be deciding the validity of their own recusal. And so Justice Neal's opinion that Judge Wardlaw just read from, he should not have done it. Judge Carney found he should have just had a timeout, let Jams decide it. There was no rush to have the hearing the next day. He could have delayed it, and that's what Judge Carney found. You're forgetting what the basis of your claim of impartiality was failure to disclose, but he had no duty to disclose that in the first place. No, we brought many grounds in the district court. Failure to disclose being one of them. No, no, no, I'm reading what you brought to Justice Neal's attention on January 8th. Yes, before Justice Neal. Actually, this was, oh, who brought this one? This is Atkinson, Endelson, Loya, Red, and Romo did this. Yes. Okay, so this wasn't Paul Hastings. That's correct. That's good. All right, well, your time's up. Thank you very much, counsel. Very briefly, just a couple of points. One, on the Pitta case, that was quite different. That was an arbitrator who was deciding whether he should withdraw or be recused from a long series of arbitrations. He was going to sit on a lot of arbitrations and make a lot of money. So in Pitta, the arbitrator had a financial interest in his own recusal decision. What Justice Neal was doing was trying to get this case to closure despite Massimo's efforts. So if the motion had been brought earlier, this would be a Pitta case in your view? No, no. It would be brought at the outset? Motion for recusal at the outset, then he would have had a financial interest in sitting on this long, contentious arbitration. But if it gets brought at the end, his financial interest is gone? Well, I think it is a very different situation in our case from the Pitta case. Second, in terms of the court is already aware of the constructive notice cases that this court has issued, as well as others, including the Athena case we recently cited to this court. My opponent said that there were all kinds of declarations saying that none of them knew that Justice Neal's brother was Stephen Neal. There was a missing declaration. It was from Stephen Berry at Paul Hastings. Stephen Berry is the lawyer who selected Justice Neal on Massimo's behalf. There is no declaration in the record that the very attorney who said, Justice Neal is acceptable to Massimo, filed any declaration saying he didn't know that. Unless you have further questions, I think my time is up.
judges: Pregerson, Wardlaw, Hurwitz